

# THE ATTORNEY GENERAL
# OF TEXAS

AUSTIN 11, TEXAS

GROVER SELLERS
WILLWILSON
ATTORNEY GENERAL

Honorable Weaver H. Baker
Chairman, Board of Control
Capitol Building
Austin, Texas

Dear Sir:

Opinion No. O-5927
Re: Does the State Board of Control
have authority to lease the
Galveston State Psychopathic
Hospital to the Federal Gov-
ernment for a venereal disease
clinic?

We acknowledge receipt of your letter of March 9, 1944, wherein
you request our opinion on the following question:

"Does the State Board of Control have the legal right to enter
into a contract with an agency of the Federal Government for the
use of the Galveston State Psychopathic Hospital for the care and
treatment of venereal patients?"

Your letter further advises that this institution has been temporarily
closed because of storm damages sustained July 27, 1943, and for the
further reason that the State Board of Control has been able to afford
hospitalization to mental patients in other existing hospitals.

The Galveston State Psychopathic Hospital, a State eleemosynary
institution, was established pursuant to Article 3192, Revised Civil
Statutes, which reads, in part, as follows:

"There shall be established and maintained a Psychopathic
Hospital at Galveston to be known as the Galveston State psy-
chopathic Hospital . . . . The Galveston State Psychopathic
Hospital shall be a hospital for the treatment of nervous and
mental diseases both in the hospital and out patient clinic,
and shall be available as a part of the teaching facilities
in mental medicine for the State Medical College."

Article 3174, Revised Civil Statutes, concerning the management
and control of State eleemosynary institutions provides as follows:

"Each eleemosynary institution established by law shall be
managed and controlled in accordance with the provisions of
this title. The general control, management and direction of

the affairs, properties and business of such institution is
vested in the State Board of Control."

Title 20 of the Revised Civil Statutes relating to the creation and
duties of the State Board of Control provides under Article 665, Revised
Civil Statutes, in part, as follows:

"The State Board of Control shall have charge and control of
all public buildings, grounds and property of the State, and is
the Custodian of all public personal property, and is charged
with the responsibility to properly care for and protect such
property from damage, intrusion or improper usage, and the Board
is expressly directed to take any steps necessary to protect any
public building against any existing or threatened fire hazards
. . . ."

By virtue of the above quoted statutes the State Psychopathic Hos-
pital at Galveston is a State eleemosynary institution under the manage-
ment and control of the State Board of Control, which Board has also
been designated the Custodian of the public buildings and grounds con-
stituting such institution and is "charged with the responsibility to
properly care for and protect such property from damage, intrusion or
improper usage".

As stated in the letter and brief attached to your request for this
opinion the institution in question has been temporarily closed since
July 27, 1943, because of storm damage and because the Board of Control
has been able to afford hospitalization to mental patients in other
existing hospitals. Furthermore, it is stated, and justifiably we think,
that the purpose for which the Government desires to lease the premises
is closely connected to the purposes for which the Galveston Psychopathic
Hospital was established. Statistics are available which will show that
10% to 20% of those treated for nervous and mental diseases at a psycho-
pathic institution are possessed of a condition traceable to syphilis.
Presently then, said building now idle is not now being used as a hospital
for the treatment of nervous and mental diseases as initially created by
statute. It is at present only a vacant public building and is not
serving a public function.

Further information furnished this department discloses that in the
event authority can be found in the State Board of Control to lease the
said building to the Federal Government for the purposes expressed here-
in, the Government in consideration thereof will repair said property
at its expense and at the cost of approximately Fifteen Thousand Dollars
($15,000), and will thereafter keep said property in good repair while
it is being used for the purposes expressed; that when the Government
has equipped the building for the use intended, the same sufficiently
equipped and in good repair will be turned over by the Government to
the Texas State Board of Health, which Board will thereafter manage and

supervise the proposed Rapid Treatment Center; that the said proposed venereal station or center will be used primarily as a station for the treatment of civilian venereal cases and will be used only incidentally, if indeed at all, to treat soldiers and other members of the armed services.

If in the wisdom of the Board of Control as Custodian of public property and grounds comprising the Galveston Psychopathic Hospital, the lease of this property to the Federal Government for the purpose stated is necessary in order "to properly care for and protect such property from damage, intrusion, or improper usage", said Board would, in our opinion, have authority under Article 665 and 3174, above quoted, to execute the lease. Such authority, we believe, would be incidental to its power to manage, control and protect public property in such a manner as will be to the best interest of the State.

It should be pointed out, however, that authority in respect of State property rights is vested in the Legislature, and the Legislature alone may exercise the power necessary to the protection of those rights by the enactment of statutes for that purpose. That is, the Legislature and not the Custodian of the State buildings has the power to determine whether the State has a present need for a building set apart, or created for psychopathic hospital purposes. Conley v. Daughters of the Republic, 106 Tex. 80, 156 S. W. 197, 200, 157 S.W. 937, reversing (Civ. App.) 157 S. W. 877, 38 Tex. Jur. page 836.

It is, therefore, the opinion of this department that the State Board of Control, as Custodian of public buildings and grounds, may execute a lease contract with an agency of the Federal Government for the use of Galveston State Psychopathic Hospital for the care and treatment of venereal patients, if under the facts submitted the Board deems the contract advantageous to the interests of the State and necessary to protect the public property from further damage and deterioration, subject, however, to the will of the Legislature when expressed with respect to the future usage of such property.

Very truly yours

ATTORNEY GENERAL OF TEXAS


By s/Chester E. Ollison
Chester E. Ollison
Assistant

CEO:ff:wc

APPROVED MARCH 21, 1944 s/Grover Sellers ATTORNEY GENERAL OF TEXAS

This Opinion Considered And Approved In Limited Conference